**HEARST TELEVISION, INC., d/b/a WGAL-TV and Daniel O'Donnell, Appellants**

v.

**Michael L. NORRIS, in his official capacity as Coroner of Cumberland County and the Pennsylvania Office of Open Records.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 2010.

Decided Nov. 16, 2010.

---

Jonathan R. Donnellan, New York, NY, for appellants.

Keith O. Brenneman, Mechanicsburg, for appellee, Michael L. Norris. Terressa E. George, Altoona, for amicus curiae, Pennsylvania Coroner's Association.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Hearst Television, Inc., d/b/a WGAL–TV and Daniel O'Donnell (together, Requesters) appeal the December 23, 2009, Order of the Court of Common Pleas of Cumberland County (trial court) that upheld the decision of the Pennsylvania Office of Open Records (OOR), which denied Requesters' appeal from the denial of their Right–to–Know Request (Request) by Michael Norris, then Coroner of Cumberland County (the Coroner).[1] Through the Request, Re-

---

1. On January 5, 2010, counsel for the Coroner filed a Suggestion of Succession, informing the trial court that the term of office of Michael L. Norris had expired and that he

questers sought to obtain records from the Coroner setting forth the manner of death of a student at Shippensburg University. In this case, the parties agree that "manner of death" records are public records and must ultimately be disclosed to the public as a matter of law. However, the parties disagree as to **when** the Coroner must disclose these public records, and this is the issue presently before our Court.

## I. Facts and Procedural Posture

The facts, as found by the trial court, are as follows. On April 16, 2009, a 19-year-old college student was found dead in his Shippensburg apartment and, subsequently, the Coroner investigated the death. Requesters sought the manner of death records of the student from the Coroner who, acting as the Agency Open Records Officer, denied the request. Relying on Section 1251 of the Act, commonly known as the "Coroner's Act,"[2] the Coroner stated that "[a]ny information this office may have regarding the manner of death for any person who died in 2009 is not public record and would not become public under current law until 30 days after the end of the year. [16 P.S. § ] 1251." (Letter from the Coroner to Requesters (April 23, 2009), R.R. at 4a.) Pursuant to the Right-to-Know Law (RTKL),[3] Requesters appealed to the OOR. On May 27, 2009, the OOR issued a Final Determination denying the appeal, concluding that "the requested record is a public record under the RTKL when it is deposited with the prothonotary's office as required by [Section 1251 of] the Coroner's

Act.... As such, the autopsy report will be available 30 days after the end of 2009." (OOR Final Determination at 4, May 27, 2009, R.R. at 10a.) Requesters filed a motion for reconsideration to the OOR, which was granted. On July 24, 2009, the OOR issued a Determination Upon Petition for Reconsideration (Reconsideration Determination) affirming its Final Determination and concluding that **immediate access** to official records of the Coroner is not required under Section 708(b)(20) of the RTKL, 65 P.S. § 67.708(b)(20), which provides as follows:

> (b) Exceptions.—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> . . . .
>
> (20) An autopsy record of a coroner or medical examiner and any audiotape of a postmortem examination or autopsy, or a copy, reproduction or facsimile of an autopsy report, a photograph, negative or print, including a photograph or videotape of the body or any portion of the body of a deceased person at the scene of death or in the course of a postmortem examination or autopsy taken or made by or caused to be taken or made by the coroner or medical examiner. **This exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death.**

*Id.* (emphasis added). Relying on the Supreme Court's decision in *Penn Jersey*

---

had been succeeded by Todd C. Eckenrode. The Suggestion of Succession requested that the caption be changed to reflect that the defendants are "Todd C. Eckenrode, Successor to Michael L. Norris, in his official capacity as Coroner of Cumberland County, and the Pennsylvania Office of Open Records." However, the trial court did not change the cap-

tion prior to Requesters filing their Notice of Appeal.

**2.** Act of August 9, 1955, P.L. 323, 16 P.S. § 1251.

**3.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101—67.3104.

*Advance, Inc. v. Grim*, 599 Pa. 534, 962 A.2d 632 (2009), the OOR determined that Section 708(b)(20) does not require immediate access to manner of death records because requiring immediate disclosure of such records would conflict with the Coroner's Act and, thus, violate Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1 (stating that the RTKL does not apply when it is in conflict with another state statute). (Reconsideration Determination at 7–8, R.R. at 37a–38a.) Requesters appealed to the trial court.

 On December 23, 2009, the trial court issued the Order upholding the OOR's Final Determination that the manner of death records need not be immediately disclosed by the Coroner pursuant to Section 708(b)(20) of the RTKL. The trial court rejected Requesters' argument that the proviso in Section 708(b)(20), which states "[t]his exception shall not limit the reporting of the name of the deceased individual and the cause and manner of death," 65 P.S. § 67.708(b)(20), (the Proviso), is an exception to the autopsy records exemption that makes manner of death records immediately disclosable under the RTKL. The trial court held that because the General Assembly failed to adopt language that could have more clearly expressed a desire to make such records subject to immediate disclosure under the RTKL, the trial court was permitted to resort to statutory interpretation or look to the legislative history of the provision. The trial court examined the original bill of Section 708(b)(20) and the first amendment passed in the House of Representatives and noted that, initially, the Proviso specifically referenced the Coroner's Act.[4] (Trial Ct. Op. at 7.) Therefore, the trial court held that notwithstanding the fact that the final amendment in the Senate, which became law, "changed the last sentence slightly [by taking] out the specific reference to [the Coroner's Act]," the Proviso does not "mandate access by a requester to the reporting of the name of the deceased individual and the cause and manner of death; rather," the Proviso only "makes sense if it is a reference to not limiting information that a coroner may release under the Coroner's Act." (Trial Ct. Op. at 7–8.) Requesters now appeal to this Court.[5]

---

4. Specifically, the trial court states as follows: The provision in the original bill was as follows:

> This exception shall not limit the 8 reporting of the name of the deceased individual, the cause 9 of death and whether the death was caused by criminal 10 activity or criminal negligence in accordance with section 11 1251 of the act of August 9, 1955 (P.L. 323, No. 130), known as 12 The County Code[, i.e., the Coroner's Act].

This following amendment was added in the House of Representatives:

> This exception shall not limit the 8 reporting of the name of the deceased individual, ~~the cause~~ 9 ~~of death and whether the death was caused by criminal~~ 10 ~~activity or criminal negligence~~ and the cause and manner of death to all persons interested therein in accordance with section 11 1251 of the act of August 9, 1955 (P.L. 323, No. 130), known as 12 The County Code[, i.e., the Coroner's Act].

This final amendment, which became law, was added in the Senate:

> This exception shall not limit the 8 reporting of the name of the deceased individual and the cause and manner of death ~~to all persons interested therein in accordance with section~~ ~~11 1251 of the act of August 9, 1955 (P.L. 323, No. 130), known as~~ ~~12 The County Code.~~

(Trial Ct. Op. at 6–7 (footnote omitted).)

5. Because there is no dispute as to the facts in this case, "our review is limited to determining whether the trial court abused its discretion, committed any error of law or violated any constitutional rights." *SWB Yankees LLC*

## II. Discussion

On appeal,[6] Requesters contend that the manner of death records must be disclosed immediately, pursuant to the RTKL. The Coroner argues that these records are exempt from the RTKL's disclosure provisions under the autopsy records exemption found in Section 708(b)(20) of the RTKL and do not have to be disclosed until those records are required to be filed with the prothonotary, thirty days after the end of the calendar year, pursuant to Section 1251 of the Coroner's Act.[7] Each party also argues that it is entitled to costs and fees related to this appeal. We will address the issues in turn.

### A. Whether Manner of Death Records are Immediately Disclosable

■ Section 302(a) of the RTKL states that: "A local agency shall provide public records in accordance with this act." 65 P.S. § 67.302(a). Section 102 of the RTKL defines the term "public record" as including a local agency "record" that: "(1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. Section 102 also defines the term "record" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency." *Id.* Section 102 further makes clear that the term "record" includes "a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document." *Id.* Moreover, Section 305(a) of the RTKL, 65 P.S. § 67.305(a), states that records possessed by local agencies are presumed to be public records, but that this "presumption shall not apply if: (1) the record is exempt under section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law, regulation or judicial order or decree." *Id.*

Section 708(a)(1) of the RTKL provides that: "The burden of proving that a record of a . . . local agency is exempt from public access shall be on the . . . local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). Section 708(b) sets forth numerous exemptions from public disclosure. At issue here is the autopsy exemption found at Section 708(b)(20) and, in particular, the Proviso within that exemption. In interpreting the meaning of the Proviso, this Court must also consider Sections 1251 and 1236.1 of the Coroner's Act, which provide as follows:

§ 1251. Official records of coroner

Every coroner, within thirty (30) days after the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the

---

*v. Gretchen Wintermantel,* 999 A.2d 672, 674 n. 2 (Pa.Cmwlth.2010). "The scope of review for a question of law under the [RTKL] is plenary." *Id.* (quoting *Stein v. Plymouth Township,* 994 A.2d 1179, 1181 n. 4 (Pa. Cmwlth.2010)).

**6.** There has been no argument that this issue is moot, and we agree with Requesters that this appeal remains properly before us. The issue raised is one of important public interest, and it is capable of repetition while apt to elude review. *Commonwealth v. Dixon,* 589 Pa. 28, 35–36, 907 A.2d 468, 472–73 (2006).

**7.** The Pennsylvania Coroner's Association (Amicus Curiae) has filed a brief expressing its support for the Coroner's position.

prothonotary for the inspection of all persons interested therein.

§ 1236.1. Requests for examinations and reports

(a) Requests for examinations or other professional services by other counties or persons may be complied with at the **discretion** of the coroner pursuant to guidelines established by the county commissioners.

(b) A set of fees and charges for such examinations or professional services shall be established by the coroner, subject to approval by the county commissioners, and shall be accounted for and paid to the county treasurer.... Payment for examinations or professional services shall be the responsibility of the county or person requesting such services.

(c) The coroner may charge and collect a fee of up to one hundred dollars ($100) for each autopsy report, up to fifty dollars ($50) for each toxicology report, up to fifty dollars ($50) for each inquisition or coroner's report and such other fees as may be established from time to time for other reports and documents requested by nongovernmental agencies. The fees collected shall be accounted for and paid to the county treasurer ... and shall be used to defray the expenses involved in the county complying with the provisions of the act of March 2, 1988 (P.L. 108, No. 22), referred to as the Coroners' Education Board Law.

16 P.S. §§ 1251, 1236.1 (emphasis added).

Requesters argue that manner of death records are subject to immediate public disclosure under the Proviso, which provides that "[t]his exception shall not limit the reporting of ... the cause and manner of death." 65 P.S. § 67.708(b)(20). Requesters contend that the Proviso contains no reference to Section 1251 of the Coroner's Act and that by removing any refer-

ence to that section in the final version of the law, the General Assembly intended to require manner of death records to be made public upon request, consistent with the RTKL's mandate and in contrast to autopsy reports, which are dealt with in the sentence preceding the Proviso. In essence, Requesters argue that the Proviso is an exception within the autopsy record exemption. Additionally, Requesters contend that there is no conflict between any part of Section 708(b)(20) of the RTKL and Sections 1251 and 1236.1 of the Coroner's Act because nothing in Section 1251 limits public access to manner of death records. Requesters further argue that there is nothing in Section 1236.1 of the Coroner's Act that conflicts with requiring manner of death records to be disclosed immediately under the RTKL because the only discretion the Coroner has under Section 1236.1 is whether to perform services in the first place. Finally, Requesters argue that to withhold immediate access to these records under the RTKL would undermine the General Assembly's intent to promote timely access of government information to citizens by narrowly construing the exemptions from disclosure.

In opposition, the Coroner essentially adopts the OOR's analysis in its Reconsideration Determination and argues that manner of death records are not available for immediate disclosure under the Proviso in Section 708(b)(20) of the RTKL. Relying on the Supreme Court's decision in *Penn Jersey,* the OOR determined that the RTKL cannot mandate immediate access to manner of death records under the Proviso because, if it did, the RTKL would conflict with Sections 1251 and 1236.1 of the Coroner's Act. (Reconsideration Determination at 7–8, R.R. at 37a–38a.)

The Supreme Court issued its decision in *Penn Jersey* prior to the enactment of Section 708(b)(20) of the RTKL. Nonethe-

less, the Supreme Court's opinion in *Penn Jersey* interprets Sections 1251 and 1236.1 of the Coroner's Act and provides insight into the interplay between the RTKL and the Coroner's Act. In *Penn Jersey,* the Supreme Court reversed this Court and held that a coroner's autopsy report is an official record within the meaning of Section 1251 of the Coroner's Act and, therefore, must be deposited with the prothonotary. *Penn Jersey,* 599 Pa. at 541, 962 A.2d at 636–37. Although the Supreme Court expressed "no opinion at this time on the relationship between the Coroner's Act and the [RTKL]," *id.* at 536 n. 2, 962 A.2d at 633 n. 2, in reaching this holding, the Supreme Court explained:

> [W]e do not share the Commonwealth Court's perception that there is a conflict between Section 1251, which may allow access to autopsy reports free of charge if they are deemed "official" records, and the later-enacted Section 1236.1(c), which allows a coroner to charge for autopsy reports. By the terms of Section 1251, the records that a coroner must deposit with the prothonotary **are not available until** thirty days after the end of each year, at which time interested persons may "inspect" such records. Section 1236.1, which is entitled "Requests for examinations and reports," authorizes a coroner to charge up to $100 for each autopsy report, without mention of any time requirement. 16 P.S. § 1236.1(c). Thus, **Section 1236.1 merely provides a rapid means of procuring an autopsy report for those who do not wish to wait until after the end of the year,** and who are also willing to pay the charges associated with procuring it. The existence of such mechanism for obtaining an autopsy report does not compel the conclusion that autopsy reports are therefore not official records under Section 1251.

*Id.* at 542–43, 962 A.2d at 637 (emphasis added) (citations omitted).

Keeping the Supreme Court's interpretation of the Coroner's Act in mind, we now determine whether an interpretation of Section 708(b)(20) of the RTKL requiring manner of death records to be immediately disclosable would conflict with the Coroner's Act. In interpreting exemptions under the RTKL, this Court is required to follow the rules of statutory construction, which direct that "[e]very statute shall be construed, if possible, to give effect to all of its provisions" and that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(a) and (b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a)-(b). This Court is not permitted to "insert a word the legislature failed to supply into a statute." *Girgis v. Board of Physical Therapy,* 859 A.2d 852, 854 (Pa.Cmwlth. 2004). However, where a statute is ambiguous, this Court may look beyond the plain language of a statute and consider other matters, such as: "[t]he occasion and necessity for the statute"; "[t]he object to be attained"; "[t]he former law, if any, including other statutes upon the same or similar subjects"; "[t]he consequences of a particular interpretation"; or "[l]egislative and administrative interpretations of such a statute." 1 Pa.C.S. § 1921(c)(1), (4)-(6), (8). Additionally, it is to be presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "[t]hat the General Assembly intends the entire statute to be effective and certain." Section 1922(1) and (2) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(1)-(2).

Although at first blush the Proviso appears to be an exception within the exemp-

tion, we agree with the OOR that such interpretation cannot prevail because immediate disclosure of manner of death records would conflict with the Coroner's Act, which was not the intent of the General Assembly when enacting the RTKL. Although the RTKL generally mandates immediate access to public records, Section 3101.1 of the RTKL provides that "[i]f the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply." 65 P.S. § 67.3101.1. The Coroner's Act specifies that manner of death information is to be filed annually, "within thirty (30) days after the end of each year … for the inspection of all persons interested therein." 16 P.S. § 1251. Thus, requiring the immediate disclosure of manner of death information under the Proviso set forth in Section 708(b)(20) would be inconsistent with a coroner's specific obligation to annually file this information with the prothonotary pursuant to Section 1251 of the Coroner's Act. The Coroner's Act also specifically authorizes a coroner to exercise discretion with regard to "[r]equests for examinations or other professional services." 16 P.S. § 1236.1(a). Such requests could include requests for autopsies or other medical examinations that usually generate a written report. A coroner's discretion under this section extends to not only deciding whether to undertake certain examinations and services but also to releasing the information within the written report that was generated by those services. *Penn Jersey*, 599 Pa. at

541–42, 962 A.2d at 637. As correctly noted by the Coroner, it would be inconsistent with Section 1236.1 of the Coroner's Act, which gives a coroner discretion regarding whether to release cause of death information before being required to do so under the Coroner's Act, to require a coroner to immediately release that same information upon request under the RTKL. Moreover, in interpreting Sections 1251 and 1236.1 of the Coroner's Act, the Supreme Court, in *Penn Jersey*, made clear that the information contained in an autopsy report—manner of death information— is **not available to the public until** the records are filed with the prothonotary thirty days after the end of the year in accordance with Section 1251, or prior to that time if a coroner uses his or her discretion to grant a request for rapid procurement under Section 1236.1. *Penn Jersey*, 599 Pa. at 542–43, 962 A.2d at 637. Thus, the Proviso cannot mandate immediate disclosure.[8]

Because we agree with the OOR and the Coroner that manner of death records are not immediately disclosable under Section 708(b)(20) of the RTKL, we affirm the trial court's Order upholding the OOR's decision denying Requesters' appeal from their RTKL Request.[9]

**B. Whether the Parties are entitled to Costs and Fees**

 Requesters argue that they are entitled to a reasonable sum reflecting attorney's fees and costs of litigation pursuant

---

8. We note that interpreting the Proviso to be consistent with the Coroner's Act also enables individuals who wish to challenge disclosure of a coroner's records without redaction to know when such disclosure would be made. *See* Article I, section 1 of the Pennsylvania Constitution (acknowledging a fundamental constitutional right to reputation); *Penn Jersey*, 599 Pa. at 542, 962 A.2d at 637 (stating that trial courts have inherent power to limit

public access to coroner's reports based on privacy or privilege concerns).

9. Here, our determination is limited to the autopsy exemption found in Section 708(b)(20) of the RTKL. The Coroner has not asserted that any other exemptions under the RTKL would prevent manner of death records from being publicly disclosed.

to Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a), because the Coroner's denial of the Request is contradicted by the language in Section 708(b)(20) of the RTKL and undermines the clear intent in the RTKL to promote timely access to public records. The Coroner argues that he is entitled to fees and costs pursuant to Section 1304(b) of the RTKL, 65 P.S. § 67.1304(b), because Requesters have offered no substantial basis for their appeal and their appeal is frivolous.

Reasonable attorney fees and costs of litigation may be granted under Section 1304 of the RTKL, which provides:

**(a) Reversal of agency determination.**—If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

**(b) Sanctions for frivolous requests or appeals.**—The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous.

**(c) Other sanctions.**—Nothing in this act shall prohibit a court from imposing penalties and costs in accordance with applicable rules of court.

65 P.S. § 67.1304. With regard to Requesters' argument that they are entitled to fees and costs under Section 1304(a), that request is denied because Requesters have not prevailed in this appeal and there is absolutely no evidence presented that the Coroner acted in bad faith or refused the Request based on an unreasonable interpretation of the law. Likewise, the Coroner's request for costs and fees under Section 1304(b) is denied because the issue presented in this appeal is a novel issue and involves the interpretation of two complicated statutes. The Coroner presented no evidence that Requesters' commencement of this appeal was arbitrary, vexatious or done in bad faith within the meaning of Section 1304(b) of the RTKL. Therefore, fees and costs are denied to both parties.

### III. Conclusion

Based on the foregoing opinion, we affirm the Order of the trial court and deny both parties costs and fees.

### ORDER

**NOW,** November 16, 2010, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is hereby **AFFIRMED.** The request for reasonable attorney fees and litigation costs made by Appellants and Appellees are hereby **DENIED.**