IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Pottstown          :
                                     :
          v.                       :
                                     : No. 1416 C.D. 2019
Shanicqua Suber-Aponte,    : No. 1417 C.D. 2019
                 Appellant   : Submitted: March 19, 2021


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED:  May 7, 2021

Shanicqua Suber-Aponte (Requester), pro se, appeals from the Montgomery County Common Pleas Court's (trial court) August 13, 2019 orders denying Requester's Motion to Compel the Borough of Pottstown (Borough) to Produce the Entire Video as Instructed in the Remand Order (Motion to Compel), and affirming its November 21, 2016 order that all of the October 4, 2015 surveillance videos are exempt from disclosure pursuant to Section 708(b)(1)(ii), (2) and (3) of the Right-to-Know Law (RTKL),[1] 65 P.S. § 708(b)(1)(ii) (personal security), (2) (public safety), and (3) (safety or physical security of building).  There are five issues before this Court: (1) whether Requester's appeal is timely; (2) whether the trial court erred by not granting Requester's Motion to Compel; (3) whether the trial court erred by not following this Court's remand order; (4) whether the trial court erred by not imposing sanctions on the Borough for spoliation of

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

evidence; and (5) whether the trial court showed bias by not issuing sanctions on the Borough. After review, this Court affirms in part and reverses in part.

## Background

On November 25, 2015, Requester submitted an RTKL request (Request) to the Borough seeking a copy of police video footage (footage) taken on October 4, 2015, of herself from the time she was brought into the Borough's police department (Department) and all activity at the Department that day. On January 4, 2016,[2] the Borough denied the Request, stating that the footage was exempt from disclosure under Section 708(b)(1)(ii), (2), (3), (16) (criminal investigation) and (17) (noncriminal investigation) of the RTKL,[3] and Sections 9102 (investigative information defined) and 9106 (investigative information) of the Criminal History Record Information Act (CHRIA).[4] The Borough also maintained that the Request lacked specificity as required by Section 703 of the RTKL.[5]

On January 13, 2016, Requester appealed to the Pennsylvania Office of Open Records (OOR), challenging the Borough's denial. The OOR allowed both parties to supplement the record. By January 25, 2016 letter, the Borough submitted a response with references to the RTKL and an affidavit by Borough Police Chief F. Richard Drumheller (Drumheller) (Affidavit). Requester did not supplement the record. The matter was stayed pending resolution of *Rothey v. California Borough* (OOR Docket No. AP 2015-1925, issued June 15, 2016) (relating to whether police

---

[2] The Borough invoked a 30-day response extension under Section 902(b)(2) of the RTKL, 65 P.S. § 67.902(b)(2).

[3] 65 P.S. § 67.708(b)(16)-(17).

[4] 18 Pa.C.S. §§ 9102, 9106.

[5] 65 P.S. § 67.703.

department footage of a confrontation between police and a detainee in a holding cell was a public record),[6] which case involved a similar request.

On July 15, 2016, the OOR issued its final determination (Final Determination) granting Requester's appeal and ordering the Borough to produce the footage because the Borough did not meet its burden to show that the footage was investigative, or that disclosure of the footage would threaten personal security, public safety, or the security of the Department. The OOR also found the Request to be sufficiently specific.

On August 15, 2016, the Borough appealed to the trial court. The trial court held a hearing on September 16, 2016, which neither Requester nor the Borough attended. On November 21, 2016, the trial court issued its Findings of Fact and Order, holding therein that the Request was insufficiently specific, and that the Borough established by a preponderance of the evidence that the footage is exempt from disclosure under the RTKL's personal security, public safety, building safety/security, and/or criminal and noncriminal investigation exceptions. Requester filed a Notice of Appeal (Appeal) with the Pennsylvania Superior Court on December 15, 2016. By March 3, 2017 Order, the Superior Court transferred the Appeal to this Court.

On January 8, 2019, this Court affirmed the portion of the trial court's November 21, 2016 order denying Requester's recusal demand; reversed the portion of the trial court's order denying Requester's Request as insufficiently specific;

---

[6] In *Rothey*, the OOR declared that the video recording was not exempt from disclosure because the borough's evidence was merely speculative. The Washington County Common Pleas Court agreed with the OOR. On appeal, this Court reversed the Washington County Common Pleas Court's order, concluding that although the video recording was not exempt from disclosure under the RTKL's security-related exemptions (*e.g.*, Section 708(b)(1)-(3) of the RTKL, 65 P.S. § 67.708(b)(1)-(3)), it was exempt under the RTKL's criminal and noncriminal investigation exceptions (*e.g.*, Section 708(b)(16) and (17) of the RTKL) and CHRIA. *See Cal. Borough v. Rothey*, 185 A.3d 456 (Pa. Cmwlth. 2018).

3

vacated the portions of the trial court's order exempting disclosure on personal security, public safety, building security, and criminal and noncriminal investigation grounds; and remanded the case to the trial court to determine which specific portions of the footage related to or resulted from the Department's personal security, public safety, building security, and criminal and noncriminal investigation. *See Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173 (Pa. Cmwlth. 2019).

**Facts**

The trial court conducted its remand hearing on April 1, 2019, at which Requester withdrew her Request for the bulk of the footage originally requested. Following the hearing, Requester questioned whether all of the footage in which she was visible had been shown. The next day, the Borough's counsel (Counsel) made further inquiries and, that day, informed the trial court that some additional footage had been located. The trial court scheduled a second remand hearing for August 13, 2019. On August 12, 2019, Requester filed the Motion to Compel, wherein, Requester recounted the April 1, 2019 hearing and the facts concerning the location of additional security cameras, and again questioned whether all of the footage had been found. Requester also related that Counsel had informed her that the new footage did not show her being assaulted. Requester further declared that she would not attend the hearing. Requester asked the trial court to impose sanctions on the Borough because portions of the security footage had either been destroyed or was being withheld.

On August 13, 2019, the trial court denied the Motion to Compel. Also on August 13, 2019, the trial court determined that all of the October 4, 2015 footage was exempt from disclosure pursuant to Section 708(b)(1)(ii), (2) and (3) of the

4

RTKL. Requester appealed from both August 13, 2019 orders to this Court.[7] On August 20, 2020, this Court consolidated the appeals. Because it appeared that Requester filed her appeals on September 16, 2019, by August 25, 2020 order, this Court directed the parties to address in their principal briefs on the merits, or in an appropriate motion, whether the consolidated appeals were timely.[8]

## Timeliness of Appeal

The Borough argues: "The trial court docketed its order[s] on August 14, 2019. [Requester] did not file her appeal[s] until September 16, 2019, thirty-three (33) days later[;]" therefore, Requester's appeal should be quashed. Borough Br. at 7 (citation omitted). However, although Requester's appeal was time-stamped September 16, 2019, it was electronically filed and marked *received* by the Montgomery County Common Pleas Court (Common Pleas)[9] on September 13,

---

[7] This Court's "review of a trial court's order in a[n] RTKL dispute is 'limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision.'" *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1178 n.7 (Pa. Cmwlth. 2017) (quoting *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011)). "The scope of review for a question of law under the [RTKL] is plenary." *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010) (quoting *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010), *aff'd*, . . . 45 A.3d 1029 ([Pa.] 2012)).

*Suber-Aponte*, 202 A.3d at 178 n.8.

[8] Notwithstanding, Requester did not address the untimeliness issue in her brief. However, the timeliness of an appeal is a jurisdictional issue, and "[l]ack of . . . jurisdiction of a court . . . to act in a matter is an issue that [] can[not] be waived by the parties[.]" *Martin v. Zoning Hearing Bd. of W. Vincent Twp.*, 230 A.3d 540, 544 (Pa. Cmwlth. 2020) (emphasis omitted) (quoting *Greenberger v. Pa. Ins. Dep't*, 39 A.3d 625, 629 n.5 (Pa. Cmwlth. 2012) (citation omitted)). Accordingly, Requester's failure to address the timeliness issue is of no moment because this Court must do so.

[9] This Court refers to the Montgomery County Common Pleas Court as Common Pleas to distinguish it from the trial court.

5

2019.[10]  *See* Original Record (O.R.) at 67[11] ("Thank you for your payment.  Your transaction confirmation number is 3727952.  **The filings** below [two appeals] **were received** by Montgomery County at **9/13/2019** 7:04:20 P[.]M.") (emphasis added).

> Pennsylvania Rule of Appellate Procedure (Rule) 902 provides:
>
> An appeal permitted by law as of right from a lower court to an appellate court shall be taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal).  **Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal**, but it is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken.

Pa.R.A.P. 902 (emphasis added); *see also Moyer v. PPL Elec. Utils. Corp.* (Pa. Cmwlth. No. 587 C.D. 2019, filed October 23, 2020), slip op. at 9[12] ("The prothonotary's correspondence to [appellant], dated May 2, 2019, demonstrates that

---

[10]

> The Montgomery County Prothonotary['s] Office has developed an electronic case filing system (e-filing) allowing attorneys and parties to electronically file civil documents and receive a response regarding the status of their filing(s).
>
> Electronic filing allows the filer to send documents 24/7 from any location with Internet access up until 11:59 p.m. and still meet a filing deadline.  The system is not mandatory.  Pleadings and other legal papers can still be filed in the traditional manner by delivery to the courthouse during normal business hours.

https://egov.montcopa.org/2210/Electronic-Filing (last visited Apr. 9, 2021).

[11] Because the pages of the trial court's original record are not numbered, the page numbers referenced herein reflect electronic pagination.

[12] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision of this Court issued after January 15, 2008, may be cited for its persuasive value, but not as binding precedent.  The unreported opinions cited herein are cited for their persuasive value.

[**appellant's**] **notice of appeal was timely received** in the trial court. **A defect in the form of an incorrect filing fee did not justify refusal to docket the timely notice of appeal**.") (emphasis added; footnote omitted); *In re Ramirez* (Pa. Cmwlth. Nos. 977, 1009 C.D. 2018, filed August 7, 2018), slip op. at 12-13 ("In reviewing whether [appellant] made a good faith effort and took reasonable steps to electronically file, it is apparent to this Court that [appellant's] initial filing on July 2, 2018, was sufficient under [Rule] 902, relating to manner of taking an appeal[;]" "[w]e emphasize that **the fact that** [**appellant**] *electronically filed* **the notice of appeal does not in any way alter the analysis under** [**Rule**] **902**.") (emphasis added).

Here, Common Pleas rejected Requester's appeal stating: "Reason for rejection: Re-File You must use the filing type 'Notice of Appeal and Service of Notice [] [.]'" O.R. at 66. Failure to use the correct "filing type," O.R. at 66, "does not affect the validity of the appeal[.]" Pa.R.A.P. 902. Accordingly, because Requester's notice of appeal was received by Common Pleas on September 13, 2019, which was 30 days after the trial court orders were docketed, her appeals were timely.

## Motion to Compel[13]

Requester argues that the trial court erred by not granting Requester's Motion to Compel, wherein Requester stated, in relevant part:

---

[13] The trial court opined that Requester's appeal from its order should be quashed because it is interlocutory. However, because Requester also appealed from the trial court's order addressing this Court's remand Order, and this Court consolidated the appeals, the order denying the Motion to Compel is now ripe for review, thereby rendering the appealability of that order moot. *See Duquesne City Sch. Dist. v. Comensky* (Pa. Cmwlth. No. 1587 C.D. 2010, filed February 24, 2012), slip op. at 5 ("'Once an appeal is filed from a final order, all prior interlocutory orders become reviewable.' *In re Bridgeport Fire Litigation*, 8 A.3d 1270, 1278 (Pa. Super. 2010) (quoting *Rohm* [*&*] *Haas Co. v. Lin*, 992 A.2d 132, 149 (Pa. Super. 2010)).").

On April 1, 2019[,] there was a hearing held concerning [Requester's Request] that was granted by the [OOR] and then appealed to [the trial c]ourt by [the Borough], which was overturned by [the trial court]. The [Borough] then appealed this reversal to the Commonwealth Court, who [sic] the[n] reversed and remanded [] to [the trial court].

The [Borough] came with [the] video, and after hours of review I stated to [the trial judge] that there were parts of the video that were missing. [Counsel] swore on the record that this was all [of] the video.

. . . .

On April 4, 2019[,] [Counsel] then submitted a letter to [the trial court] stating that there was in fact more video. I called [Counsel] and asked was the 'assault' on there and he said no. He said the additional footage that was 'found' only showed me being handcuffed. I advised [Counsel] that it was impossible for them to 'find' that footage and not the other because it all occurred in the same room while I was handcuffed.

. . . .

I ask the [trial] court to COMPEL the [Borough] to show [the] entire video. What they are doing is illegal and unethical. I also ask the [trial] court to impose sanctions for their actions. They withheld this video during a criminal trial, when they were legally obligated to release it, despite the horrible actions of the police officers that it would have revealed. It is clear that they have either destroyed the video or simply refuses [sic] for it to be viewed, which is a violation of the Commonwealth Court [O]rder.

O.R. at 55-56. The Borough rejoins that the trial court properly denied the Motion to Compel after Requester failed to appear at the hearing and did not present any evidence in support of her allegations.

This Court has explained: "It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part[,] or none of the evidence, to make

8

all credibility determinations, and to resolve all conflicts in the evidence." *Laurel Rd. Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018).

In the Borough's brief, Counsel maintains that the conversation referred to in the Motion to Compel between Requester and Counsel never occurred. The August 13, 2019 hearing transcript reveals that the Borough presented the last of the found footage. As Requester did not appear at the August 13, 2019 hearing, she did not see the footage presented or object to Counsel's representation. Based on the evidence before it, the trial court as fact-finder found that it "ha[d] reviewed **all the videos remaining** after [Requester] modified her [Request,]" and that it was "exempt[] from disclosure under the [RTKL] based upon [Section] 708(b)(1)(ii) . . . 708(b)(2) . . . and . . . 708(b)(3) [of the RTKL]." Trial Ct. Op. (1416 C.D. 2019) at 5 (emphasis added). "This Court . . . cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court." *Freas*, 191 A.3d at 952. Accordingly, this Court will not disturb the trial court's denial of the Motion to Compel.

### Remand Order

Requester argues that an agency must offer more than speculation or conjecture to establish the security-related exceptions under the RTKL. The Borough failed to satisfy its burden of proving that the video recording is exempt from disclosure under the RTKL's security-related exceptions because its evidence consisted of mere speculation. The Borough rejoins that, based upon its review of the surveillance footage, the former police chief's uncontroverted testimony at the initial hearing, and the current police chief's uncontroverted testimony at the remand hearing, the trial court properly concluded that the footage was exempt pursuant to the RTKL's threat to personal safety and security, public safety, and physical security of a building exemptions.

In January 2019, this Court remanded this matter specifically for the trial court: (1) "to examine the footage to determine which cameras capture secure areas of the Department referenced by [the then police chief] as posing a security risk to the Department's officers, law enforcement, staff, the general public and other detainees[;]" (2) "to determine which parts of the footage [capture the armory or other secure locations within the Department], and are thus exempt under Section 708(b)(2) of the RTKL[;]" and (3) "to determine which camera footage [implicates building security concerns, and is thus] exempt under Section 708(b)(3) of the RTKL."[14] *Suber-Aponte*, 202 A.3d at 183-84.

> On remand, the trial court acknowledged:
>
> [Requester] agreed she was no longer requesting to obtain parts of the [footage] in which she was not shown. She also agreed that she was no longer seeking to obtain any [footage] which showed her after she left the police station. [Requester's] agreement significantly limited her request for the [footage].

Trial Ct. Op. (1417 C.D. 2019) at 6. The trial court opined:

> The review of the [footage] and the evidence, including testimony of the police chiefs presented by [the Borough,] led th[e trial c]ourt to the conclusion that all of the [footage] sought [was] exempted from disclosure under the [RTKL] based upon [Section] 708(b)(1)(ii) (personal security), and . . . (b)(2) (public safety) and . . . (b)(3) (safety or physical security of building). Therefore, based on these exemptions, the order denying the [Request] for the [footage], as modified by [Requester's] agreement, was properly denied.

*Id*. at 7.

---

[14] This Court also remanded in January 2019 for the trial court "to determine which specific portions of the footage related to or resulted from the police department's criminal and noncriminal investigations." *Suber-Aponte*, 202 A.3d at 186. However, the trial court did not exempt any of the footage based on Section 708(b)(16) and (17) of the RTKL or CHRIA on remand.

Given the above, it is unclear how the entirety of the remaining footage falls squarely within the RTKL's exemptions for the Department's personal security, public safety and building security. However, it is clear that Requester is seeking a specific portion of footage showing her being assaulted, which apparently does not exist or, at the very least, is not in the Borough's custody. The trial court was directed to examine the footage to determine **which cameras captured secure areas of the Department referenced by the then police chief as posing a security risk to the Department's officers**, **law enforcement**, **staff**, **the general public and other detainees**; to determine **which parts of the footage captured the armory or other secure locations within the Department**, **and** are thus exempt under Section 708(b)(2) of the RTKL; and to determine **which camera footage implicated building security concerns**, and is thus exempt under Section 708(b)(3) of the RTKL. Although the trial court made no such findings after the remand hearings, another remand for further clarification will not benefit this Court or Requester.

Further support that remanding the case would be futile is the fact that, at the August 13, 2019 hearing, Counsel clarified for the record that the footage presented at the remand hearing was the same footage presented during the criminal trial. *See* Notes of Testimony, August 13, 2019 (N.T.) at 20; N.T. Ex. P-2 (May 24, 2019 letter from the Montgomery County District Attorney's Office); *see also* N.T. Ex. P-3 (corresponding compact disc containing the surveillance footage). Thus, Requester has not only viewed all available footage, but she received a copy thereof during discovery preceding her criminal trial. *See id.*

This Court is troubled by the fact that the trial court viewed the entire footage in open court as opposed to *in camera*. The trial court's public viewing is especially disturbing given the testimony by both police chiefs that the footage should be exempt due to security and safety issues of the Department, its personnel, and the public. This Court is further perplexed as to how the footage can be exempt

11

under Section 708(b)(1)(ii), (2) and (3) of the RTKL, yet given to Requester and viewed in public by the trial court.

For all of the above reasons, while this Court acknowledges the exemptions are in place for legitimate safety/security concerns, those purposes have been undermined by disclosure, and therefore, belie the basis for the exemptions to apply in this instance. Further, Requester has modified her Request to portions of the footage which apparently do not exist or, at the very least, are not in the Borough's custody. Moreover, with respect to the footage the trial court exempted, Requester either already possesses it and/or the footage was viewed in open court. Accordingly, the trial court's order finding that the modified request is exempt under Section 708(b)(1)(ii), (2) and (3) of the RTKL is reversed.

**Sanctions**

Requester argues that the trial court erred by not imposing sanctions on the Borough for spoliation of evidence, and by demonstrating bias by not issuing said sanctions. Specifically, Requester contends that the trial court should have issued sanctions upon the Borough when it received the letter stating that the Borough had not provided all footage to the trial court as ordered by this Court. *See* N.T. Ex. P-2. Requester avers that, in the letter, the Borough attempts to justify its negligence by stating that it was unclear of the meaning of this Court's Order. Requester asserts that such an excuse is unacceptable when, as seasoned attorneys, they knew and had time to file clarification motions prior to the remand hearing. Requester proclaims that it was not until after Requester informed the Borough of her intention to call the public defender as a witness that the Borough responded that it unintentionally withheld footage. The Borough rejoins that it went to great lengths to both preserve the footage and to ensure that the trial court viewed it in its entirety.

12

This Court has described:

"Spoliation of evidence is the non-preservation or significant alteration of evidence for pending or future litigation." *Pyeritz v. Commonwealth*, . . . 32 A.3d 687, 692 ([Pa.] 2011). The doctrine of spoliation provides that a party may not benefit from its own destruction or withholding of evidence.

"When a party to a suit has been charged with spoliating evidence in that suit . . . , [our Supreme Court] [has] allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator." *Pyeritz*, 32 A.3d at 692 . . . . The decision of whether, and how, to sanction a party rests within the sound discretion of the trial court. Thus, when reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion.

An abuse of discretion exists when the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will.

*King v. Pittsburgh Water & Sewer Auth.*, 139 A.3d 336, 345 (Pa. Cmwlth. 2016) (citations omitted).

Here, this Court has nothing before it other than Requester's bare allegations that the Borough engaged in evidence spoilation. Because Requester did not appear at the hearing to present evidence in support of her claim, the trial court properly declined to impose sanctions on the Borough for spoliation of evidence. This Court cannot conclude that doing so was a result of bias or an abuse of discretion. Accordingly, the trial court did not err or show bias by declining to impose sanctions on the Borough.

13

## Conclusion

For all of the above reasons, the trial court's order denying the Motion to Compel is affirmed, and the trial court's order declaring the footage exempt under Section 708(b)(1)(ii), (2) and (3) of the RTKL is reversed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Pottstown        :
                                :
         v.                 :
                                :   No. 1416 C.D. 2019
Shanicqua Suber-Aponte,    :   No. 1417 C.D. 2019
            Appellant    :

## O R D E R

AND NOW, this 7th day of May, 2021, the Montgomery County Common Pleas Court's (trial court) August 13, 2019 order denying Shanicqua Suber-Aponte's Motion to Compel the Borough of Pottstown to Produce the Entire Video as Instructed in the Remand Order is AFFIRMED. The trial court's August 13, 2019 order affirming that all of the October 4, 2015 surveillance videos are exempt from disclosure pursuant to Section 708(b)(1)(ii), (2) and (3) of the Act of February 14, 2008, P.L. 6, the Right-to-Know Law, 65 P.S. § 708(b)(1)(ii), (2) and (3), is REVERSED.

 

_____
ANNE E. COVEY, Judge